Michael L. Baum (SBN: 119511)
mbaum@baumhedlundlaw.com
R. Brent Wisner (SBN: 276023)
rbwisner@baumhedlundlaw.com
**BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel:  (310) 207-3233
Fax: (310) 820-7444

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| KATRYNA WOLFF; DONALD WILLIAM RUDDELL; JAMES HENERY AMUNDSEN; TONY LABELL HARRISON; MARTIN ADELIDO HERRERA; GLORIA J. JORDAN; PEARLIE MAE MADDOX; DENISE KAY VITAL; WILLIAM GEORGE BOOKER; BOBBI JEAN WOOD; GOLDIE FAYE ANDERSON; JAMES CALDWELL; CHRISTINA and ROBERT BAILEY; PATRICIA ANN JACKSON; WENDY DENESE DANIELS; ARTHUR LEE DAVIS; RONNIE DAVIS; YOLANDA NECOLE JORDAN; SAMUEL EARL SMITH; STEPHEN THOMAS MAGEE; SANDRA JEAN MENDOZA; LISA DENISE SMITH; BEVERLY THURMAN; DAVID J. ADAMCHICK; JOYCE LIGHTLY; LORETTA PRESSLEY; MELODIE REHM; ERICA SHUNOSKI; CARLA TURNER, <br><br>       Plaintiffs, <br><br>       v. <br><br> ELI LILLY AND COMPANY, an Indiana corporation, <br>       Defendant. | Case No.: <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

1

## INTRODUCTION

1.      Cymbalta (generically known as duloxetine) is a prescription antidepressant manufactured, marketed and sold by Defendant Eli Lilly and Company ("Lilly").  This civil action alleges personal injuries and damages Plaintiff suffered as a result of Lilly's failure to provide adequate instructions for stopping Cymbalta and an adequate warning that fully and accurately informed Plaintiff about the frequency, severity, and/or duration of symptoms associated with Cymbalta withdrawal.  In addition, Plaintiff alleges that Lilly defectively designed Cymbalta pills as delayed-release capsules with beads available only in 20, 30 and 60 mg doses, with a label that instructs users that the drug "should be swallowed whole and should not be chewed or crushed, nor the capsule be opened and its contents be sprinkled on food or mixed with liquids."  Lilly's design (delayed-release capsules with beads available only in 20, 30 and 60 mg doses) and accompanying instructions (Cymbalta should be "gradually tapered," but should only be "swallowed whole") prevented Plaintiff from properly tapering off of the drug.

## PARTIES

1.      Plaintiff Katryna Wolff is, and at all times relevant to this Complaint was, a citizen of the State of California and resident of Sacramento County.

2.      Plaintiff Donald William is, and at all times relevant to this Complaint was, a citizen of the State of California and resident of Riverside County.

3.      Plaintiff James Henery Amundsen is, and at all times relevant to this Complaint was, a citizen of the State of Idaho and resident of Bannock County.

4.      Plaintiff Tony Labell Harrison is, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Madison County.

5.      Plaintiff Martin Adelido Herrera is, and at all times relevant to this Complaint was, a citizen of the State of New Mexico and resident of Rio Arriba County.

COMPLAINT

6.      Plaintiff Gloria J. Jordan is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Harris County.

7.      Plaintiff Pearlie Mae Maddox is, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Tuscaloosa County.

8.      Plaintiff Denise Kay Vital is, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of Calcasieu County.

9.      Plaintiff William George Booker is, and at all times relevant to this Complaint was, a citizen of the State of Florida and resident of Washington County.

10.      Plaintiff Bobbi Jean Wood is, and at all times relevant to this Complaint was, a citizen of the State of Illinois and resident of Rock Island County.

11.      Plaintiff Goldie Faye Anderson is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Nacodoches County.

12.      Plaintiff James Caldwell is, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Blount County.

13.      Plaintiffs Christina and Robert Bailey are, and at all times relevant to this Complaint were, citizens of the State of West Virginia and residents of Wyoming County.

14.      Plaintiff Patricia Ann Jackson is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Fort Bend County.

15.      Plaintiff Wendy Denese Daniels is, and at all times relevant to this Complaint was, a citizen of the State of South Carolina and resident of Florence County.

16.      Plaintiff Arthur Lee Davis is, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Hardeman County.

17.      Plaintiff Ronnie Davis is, and at all times relevant to this Complaint was, a citizen of

the State of North Carolina and resident of Mecklenburg County.

18.     Plaintiff Yolanda Necole Jordan is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Harris County.

19.     Plaintiff Samuel Earl Smith is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Smith County.

20.     Plaintiff Stephen Thomas Magee is, and at all times relevant to this Complaint was, a citizen of the State of Montana and resident of Stillwater County.

21.     Plaintiff Sandra Jean Mendoza is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Atascosa County.

22.     Plaintiff Lisa Denise Smith is, and at all times relevant to this Complaint was, a citizen of the State of Georgia and resident of Lowndes County.

23.     Plaintiff Beverly Thurman is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Cherokee County.

24.     Plaintiff David J. Adamchick is, and at all times relevant to this Complaint was, a citizen of the State of Pennsylvania and resident of Cumberland County.

25.     Plaintiff Joyce Lightly is, and at all times relevant to this Complaint was, a citizen of the State of Connecticut and resident of New Haven County.

26.     Plaintiff Loretta Pressley is, and at all times relevant to this Complaint was, a citizen of the State of South Carolina and resident of Anderson County.

27.     Plaintiff Melody Rehm is, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Leon County.

28.     Plaintiff Erica Shunoski is, and at all times relevant to this Complaint was, a citizen of the State of Pennsylvania and resident of Luzerne County.

29.     Plaintiff Carla Turner is, and at all times relevant to this Complaint was, a citizen of the State of Illinois and resident of Winnebago County.

30.     Defendant Eli Lilly and Company is, and at all times relevant to this Complaint was, an Indiana corporation with its headquarters in Indianapolis, Indiana.  Lilly is a pharmaceutical company involved in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of numerous pharmaceutical products, including Cymbalta.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332. There is complete diversity of citizenship between Plaintiffs and Lilly and the amount in controversy exceeds $75,000.00.

32.     This Court has personal jurisdiction over Lilly because Lilly has purposefully directed its marketing and sales of numerous pharmaceutical products to the State of California.  Lilly has had substantial contacts with the State of California such that maintenance of the action is consistent with traditional notions of fair play and substantial justice.

33.     Furthermore, Lilly has caused tortious injury by acts and omissions in the State of California, as well as caused tortious injury by acts and omissions outside of the State of California, while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in the State of California.

34.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391.  A substantial portion of the events giving rise to the claims alleged in this Complaint took place within the State of California and within the Eastern District of California.

## FACTUAL ALLEGATIONS

35.     Lilly is one of the largest pharmaceutical companies in the world with annual revenues exceeding $20 billion.  A substantial portion of Lilly's sales and profits have been derived from

Cymbalta, whose 2013 annual sales exceeded $3.9 billion.

36.     Lilly has enjoyed considerable financial success from manufacturing and selling antidepressants, including Prozac (generically known as fluoxetine). Lilly launched Prozac in 1988, touting it as the first "Selective Serotonin Reuptake Inhibitor" ("SSRI"). SSRIs are a class of antidepressant drugs that have been promoted as increasing the brain chemical serotonin in the synaptic clefts between the neurons in the brain. Prozac became extremely popular in the 1990s and was the top-selling antidepressant of its kind. Prozac's patent expired in August 2001, leading to a proliferation of generic versions of the drug.

37.     In 2001, Lilly needed to fill the void left behind by Prozac's patent expiration, and so it sought approval by the Food and Drug Administration ("FDA") for its next patented antidepressant, Cymbalta. Cymbalta belongs to a class of antidepressants known as "Serotonin and Norepinephrine Reuptake Inhibitors" ("SNRIs"). SNRIs are similar to SSRIs, but in addition to blocking the absorption of serotonin, SNRIs are thought to block the absorption of another neurotransmitter, norepinephrine, thereby increasing the levels of both serotonin and norepinephrine in the brain. These drugs are promoted as treatments for pain as well as depression.

38.     The FDA initially rejected Lilly's application in 2003 for approval of Cymbalta due to certain violations of good manufacturing practices and the risk of liver toxicity apparent in the drug's safety profile.

39.     Eventually, in 2004, the FDA approved Cymbalta with a liver toxicity warning included in the prescribing information. The drug was approved for Major Depressive Disorder ("MDD"). In 2007, the FDA approved Cymbalta for treatment of Generalized Anxiety Disorder ("GAD") and in 2008 for treatment of fibromyalgia.

40.     Since the FDA's initial approval of Cymbalta in 2004, Lilly has aggressively marketed

the drug to the public and the medical community, spending millions of dollars each year on advertising and promotion.  Lilly has promoted Cymbalta directly to consumers, including Plaintiffs, through various media platforms, including internet, print and television.  In addition, Lilly has promoted Cymbalta to the medical community by utilizing its well-organized army of sales representatives to personally visit physicians and health care professionals to distribute free drug samples and promotional literature.

41.    Lilly's promotional campaigns have continuously failed to provide adequate instructions to users and health care professionals for stopping Cymbalta and have failed to include adequate warnings that fully and accurately inform users and health care professionals about the frequency, severity, and/or duration of Cymbalta withdrawal.

42.    Withdrawal symptoms are not connected to a patient's underlying condition but rather are the body's physical reactions to the drug leaving the system.  While many SSRIs and SNRIs can cause withdrawal symptoms, the initiation, frequency, and severity of withdrawal symptoms correlate to a drug's half-life.  The half-life of a drug is the time it takes for the concentration of the drug in the body to be reduced by half.  This information is one of the basic pharmacokinetic properties of a drug and is known to researchers developing the drug.  Cymbalta has one of the shortest half-lives of any of the SSRIs and SNRIs.  Since 2004, the Cymbalta label has stated that the half-life of Cymbalta is approximately 12 hours.  In contrast, the half-life of Prozac is seven days.  The shorter the half-life, the faster the body eliminates the drug from the system, thus creating a higher risk of withdrawal symptoms.  Because Cymbalta's half-life is less than one day and Cymbalta is generally administered once daily, it is possible for users of Cymbalta to experience withdrawal symptoms after simply forgetting to take one dose.  This also means that users cannot safely taper off of the drug by taking a capsule every other day.

COMPLAINT

43.     Despite Lilly's awareness of Cymbalta's half-life and the correlation between a short half-life and withdrawal risk, Lilly did not include any cross-references between the Pharmacokinetics section of the label and either the Precautions section or the Dosage and Use section.  In fact, rather than drawing attention to the potential consequences of Cymbalta's extremely short half-life, Lilly misleadingly referenced all other SSRIs and SNRIs, as if Cymbalta could be expected to pose a similar risk of withdrawal as all other drugs of its class generally:

> During marketing of other SSRIs and SNRIs (Serotonin and Norepinephrine Reuptake Inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g. paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional liability, insomnia, hypomania, tinnitus, and seizures. Although these events are generally self-limiting, some have been reported to be severe.

44.     (2004 Cymbalta label.)  The extremely short half-life of Cymbalta should have alerted Lilly's researchers to the fact that the risk of Cymbalta withdrawal would be more frequent than that experienced with other SSRIs and SNRIs.

45.     In addition, Lilly failed quantify Cymbalta's half-life, so users could compare Cymbatla's risk of withdrawal against other antidepressants and neuropathic pain treatments. Specifically, Cymbalta's half-life is approximately 12 hours, whereas other antidepressants such as Prozac (4-6 days), Celexa (35 hours), Zoloft (26 hours), or Paxil (21 hours) have significantly longer half-lives.  Lilly did not adequately warn patients and prescribers that Cymbalta posed a significantly higher risk of withdrawal as compared to other competing medications.  The results was a false impression that Cymbalta posed the same risk of withdrawal as other antidepressants—a fact that is demonstrably false.

46.     Lilly should have been aware of the significance of antidepressant withdrawal, because Lilly had previously researched and publicized the issue in connection with its antidepressant

8

COMPLAINT

Prozac.  Because Prozac has an extremely long half-life relative to other antidepressants, the length of time it takes for a person's body to fully eliminate Prozac from the system provides a built-in gradual tapering of sorts, so that withdrawal symptoms from Prozac are relatively infrequent.  Prozac's main competitors in the 1990s, Zoloft and Paxil, had shorter half-lives, and Lilly engineered a campaign to differentiate Prozac from its competitors on this basis, funding clinical studies of antidepressant withdrawal and coining the term "antidepressant discontinuation syndrome."

47.     Researchers, including Lilly's own consultants, have postulated that withdrawal reactions result from a sudden decrease in the availability of synaptic serotonin in the face of down-regulated serotonin receptors.  *See* Schatzberg et al., *Possible mechanisms of the serotonin reuptake inhibitor discontinuation syndrome*, J. CLIN PSYCHIATRY 58 (suppl7): 23-7 (1997); Blier and Tremblay, *Physiological mechanisms underlying the anti-depressant discontinuation syndrome*, J CLIN PSYCHIATRY 67 (suppl4) (2006): 8-13.  They have theorized that, upon chronic dosing, the increased occupancy of pre-synaptic serotonin receptors signals the pre-synaptic neuron to synthesize and release less serotonin. Serotonin levels within the synapse drop, then rise again, ultimately leading to down-regulation of post-synaptic serotonin receptors.  In other words, as SSRIs and SNRIs block the reuptake of serotonin and norepinephrine, structural changes in the brain occur such that production of these neurotransmitters is reduced.  These changes in the brain's architecture may contribute to withdrawal symptoms, as a patient is, upon cessation of the drug, left not only with the absence of the drug but also structural changes in the brain that remain for some time even after the drug has fully washed out of the person's system.  Because of the short half-life of Cymbalta, the brain has even less time to adjust to the cessation of Cymbalta treatment.  Despite Lilly's knowledge of this phenomenon, Lilly did not include in Cymbalta's label or promotional materials any information regarding the increased risk of withdrawal due to structural changes in the brain

exacerbated by Cymbalta's short half-life.

48.     As Lilly was fully aware of the issue of antidepressant withdrawal and of Cymbalta's elevated withdrawal risk, Lilly should not only have included a strong warning to physicians and patients, but it should have also designed the drug in such a way that would easily allow for a gradual tapering off of the drug.  Instead, Cymbalta is manufactured as a delayed-release capsule filled with tiny beads at 20, 30 and 60 mg doses only, and Cymbalta's label and Medication Guide instruct physicians and patients that the capsule "should be swallowed whole and should not be chewed or crushed, nor should the capsule be opened and its contents be sprinkled on food or mixed with liquids."  In contrast, other SSRIs and SNRIs are available as scored tablets that can be halved and quartered with relative ease, or are available in liquid form which can be measured and dispensed in small increments.

49.     The warning label for Cymbalta with regard to withdrawal risks has changed slightly from year to year.  Generally, Cymbalta's label provided the following precaution regarding stopping Cymbalta:

> Discontinuation symptoms have been systematically evaluated in patients taking duloxetine. Following abrupt or tapered discontinuation in placebo-controlled clinical trials, the following symptoms occurred at a rate greater than or equal to 1% and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, fatigue, paresthesia, vomiting, irritability, nightmares, insomnia, diarrhea, anxiety, hyperhidrosis and vertigo . . . .

50.     Cymbalta's label also provided the following instructions for stopping Cymbalta:

> A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate.

51.     Thus, in addition to using the euphemistic term "discontinuation" to describe Cymbalta's withdrawal symptoms, the label did not accurately reflect that a significant percentage of

Cymbalta users suffered from withdrawal symptoms.  Rather, the warnings suggested that Cymbalta withdrawal was rare, or occurred at a rate of approximately one (1) percent.  However, Lilly's own studies, published as a January 2005 article in the Journal of Affective Disorders, showed that, at a minimum, between 44.3% and 50% of Cymbalta patients suffered from "discontinuation" side effects (i.e., withdrawal symptoms).[1]  The article also noted that the withdrawal symptom data compiled during Lilly's clinical trials was gathered from "spontaneous reports" of symptoms (patients volunteering symptoms), and not using the more accurate "symptom checklist."  The authors acknowledge that use of a symptom checklist would likely produce even higher incidence rates of withdrawal symptoms.  David G. Perahia et al., *Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder*, 89 J. AFFECTIVE DISORDERS 207, 207-12 (2005).  Notwithstanding, Lilly omitted this critical information from its label, instead misleadingly stating only that certain symptoms are experienced at a rate of 1% / 2% or greater, suggesting that Cymbalta withdrawal is rare or infrequent.

52.     Moreover, Lilly's clinical trials showed that, overall, between 9.6% and 17.2% of Cymbalta users suffered *severe* withdrawal symptoms, *id.*, yet nowhere in the label does Lilly inform practitioners and patients of that risk.

53.     Cymbalta's withdrawal symptoms include, among other things, headaches, dizziness, nausea, fatigue, diarrhea, paresthesia, vomiting, irritability, nightmares, insomnia, anxiety, hyperhidrosis, sensory disturbances, electric shock sensations, seizures, and vertigo.  When users try to stop taking Cymbalta, the side effects can be severe enough to force them to start taking Cymbalta again, not to treat their underlying conditions, but simply to stop the withdrawal symptoms.  Users become prisoners to Cymbalta, and Lilly financially benefits by having a legion of physically dependent, long-term users of Cymbalta.

54.     And, as set forth above, the design of Cymbalta pills, as delayed-release capsules

---

[1] Indeed, the Cymbalta warning label in Europe states that "In clinical trials adverse events seen on abrupt treatment discontinuation occurred in approximately 45% of patients treated with Cymbalta[.]"  Nowhere in the US label is this 45% risk disclosed.

COMPLAINT

filled with tiny beads at 20, 30 and 60 mg doses only, along with the instruction to swallow them whole, prevents users from properly tapering (gradually decreasing their dosage) from Cymbalta in order to avoid or reduce withdrawal symptoms.  The actual design of the Cymbalta pill prohibits users from being able to safely taper off the medication.

55.     Despite Lilly's knowledge of the high rate of withdrawal symptoms in users stopping Cymbalta, Lilly neither provided adequate instructions to users and physicians for stopping Cymbalta nor included adequate warnings in its product label, marketing, or advertising to fully and accurately inform users and physicians about the frequency, severity, and/or duration of the withdrawal symptoms.

56.     Lilly's misleading direct-to-consumer promotional campaigns and its failure to adequately warn users and physicians about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms have paid off financially for Lilly.  Cymbalta became a "blockbuster" drug with over $3.9 billion dollars in annual sales.  In the past few years, Cymbalta has either been the most profitable or second most profitable drug in Lilly's product line.  Lilly had the knowledge, the means, and the duty to provide adequate instructions for stopping Cymbalta and adequate warnings about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.  Lilly could have relayed these instructions and warnings through the same means it utilized to promote its products, which included but are not limited to its labeling, "Dear Doctor letters," advertisements, and sales representatives.

57.     Falsely reassured by the misleading manner in which Lilly reported Cymbalta's withdrawal symptoms, physicians, including Plaintiffs' physicians, have prescribed, and continue to prescribe, Cymbalta to patients without adequate instructions for stopping Cymbalta and without adequate warnings that fully and accurately inform them about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

58.     At all times relevant, Lilly knew or should have known of the significantly increased risk of withdrawal symptoms, including their severity and duration, posed by Cymbalta and yet failed to adequately warn about said risks.

59.   Plaintiffs' use of the drug and their consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

60.   Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

61.   As a direct and proximate result of taking Cymbalta, Plaintiffs suffered compensable injuries, including but not limited to the following:

a.   physical, emotional, and psychological injuries;

b.   past and future pain and suffering;

c.   past and future mental anguish;

d.   loss of enjoyment of life;

e.   past and future medical and related expenses; and

f.   loss of consortium and companionship.

**I.   PLAINTIFF KATRYNA WOLFF**

62.   At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Katryna Wolff and Plaintiff Katryna Wolff's physicians.

63.   Plaintiff Katryna Wolff's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and

13
COMPLAINT

accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

64.    Plaintiff Katryna Wolff's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

65.    In or around 2012, Plaintiff Katryna Wolff was prescribed Cymbalta by her physician for chronic pain.

66.    In or around March 2014, Plaintiff Katryna Wolff attempted to cease ingestion of Cymbalta.

67.    Plaintiff Katryna Wolff experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, electric shock-like sensations in the head ("brain zaps"), nightmares and/or sleep disturbance, vertigo or dizziness and nausea.

68.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Katryna Wolff 's physician would not have prescribed the drug to Plaintiff Katryna Wolff; Plaintiff Katryna Wolff would have refused the drug; and/or Plaintiff Katryna Wolff 's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Katryna Wolff 's injuries and damages.

## II.    PLAINTIFF DONALD WILLIAM RUDDELL

69.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including

its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Donald William Ruddell and his physicians.

70.     Plaintiff Donald William Ruddell's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

71.     Plaintiff Donald William Ruddell's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

72.     In or around 2010, Plaintiff Donald William Ruddell was prescribed Cymbalta by his physician, for treatment of depression.

73.     In or around 2013, Plaintiff Donald William Ruddell stopped taking Cymbalta.

74.     In or around 2013, and within one day of stopping Cymbalta, Plaintiff Donald William Ruddell experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Donald William Ruddell experienced extreme mood swings, agitation, irritability, electric shock-like sensations in his head, nightmares, sleep disturbance, insomnia, vertigo, dizziness, nausea, suicidal thoughts, heart problems, and loss of consciousness. Donald William Ruddell also became violent with others, and attempted suicide or self-harm after

stopping Cymbalta.

75.     If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Donald William Ruddell's physician would not have prescribed the drug to Plaintiff Ruddell; Plaintiff Donald William Ruddell would have refused the drug; and/or Plaintiff Donald William Ruddell's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Donald William Ruddell's injuries and damages.

### III.     PLAINTIFF JAMES HENERY AMUNDSEN

76.     At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff James Henery Amundsen and his physicians.

77.     Plaintiff James Henery Amundsen's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

78.     Plaintiff James Henery Amundsen's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of

Cymbalta's withdrawal symptoms.

79.     In or around August 2012, Plaintiff James Henery Amundsen was prescribed Cymbalta by his physician, for treatment of depression and pain.

80.     In or around January 2013, Plaintiff James Henery Amundsen stopped taking Cymbalta.

81.     In or around January 2013, and within days of stopping Cymbalta, Plaintiff James Henery Amundsen experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff James Henery Amundsen experienced severe withdrawal, severe enough to interfere with life and work.

82.     If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff James Henery Amundsen's physician would not have prescribed the drug to Plaintiff Amundsen; Plaintiff James Henery Amundsen would have refused the drug; and/or Plaintiff James Henery Amundsen's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff James Henery Amundsen's injuries and damages.

**IV.     TONY LABELL HARRISON**

83.     At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Tony Labell Harrison and his physicians.

84.     Plaintiff Tony Labell Harrison's use of the drug and consequent injuries and damages

were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

85.     Plaintiff Tony Labell Harrison's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

86.     In or around January 2008, Plaintiff Tony Labell Harrison was prescribed Cymbalta by his physician, for Post Traumatic Stress Disorder and severe depression.

87.     In or around January 2013, Plaintiff Tony Labell Harrison stopped taking Cymbalta.

88.     In or around January 2013, and within one day of stopping Cymbalta, Plaintiff Tony Labell Harrison experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Tony Labell Harrison experienced extreme mood swings, anger, feelings of hopelessness, bloody stools, loss of appetite, dizziness, memory loss, feelings of becoming distant from family, wandering mind, insomnia, loss of desire for a sexual relationship with his wife, nausea, electric shock sensations in the brain commonly called "brain zaps," seizures, paresthesia, nightmares, vertigo, dizziness and suicidal thoughts.

89.     If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Tony Labell Harrison's physician would not have prescribed the drug to Plaintiff Harrison; Plaintiff Tony Labell Harrison would have refused the drug; and/or

Plaintiff Tony Labell Harrison's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Tony Labell Harrison's injuries and damages.

## V.   PLAINTIFF MARTIN ADELIDO HERRERA

90.     At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Martin Adelido Herrera and his physicians.

91.     Plaintiff Martin Adelido Herrera's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

92.     Plaintiff Martin Adelido Herrera's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

93.     In or around April 2011, Plaintiff Martin Adelido Herrera was prescribed Cymbalta by his physician, for treatment of depression.

94.     In or around 2012, Plaintiff Martin Adelido Herrera stopped taking Cymbalta.

95.     In or around 2012, and within one week of stopping Cymbalta, Plaintiff Martin

Adelido Herrera experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Martin Adelido Herrera experienced extreme mood swings, anger, agitation, irritability, electric shock-like sensations in his head, commonly called "brain zaps," nightmares, sleep disturbance, vertigo, dizziness, and suicidal thoughts.

96.     If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Martin Adelido Herrera's physician would not have prescribed the drug to Plaintiff Herrera; Plaintiff Martin Adelido Herrera would have refused the drug; and/or Plaintiff Martin Adelido Herrera's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Martin Adelido Herrera's injuries and damages.

**VI.     PLAINTIFF GLORIA J. JORDAN**

97.     At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Gloria Jean Jordan and her physicians.

98.     Plaintiff Gloria Jean Jordan's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

99.     Plaintiff Gloria Jean Jordan's use of the drug and consequent injuries and damages

were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

100.   In or around April 2012, Plaintiff Gloria Jean Jordan was prescribed Cymbalta by her physician, for treatment of depression.

101.   In or around January 2013, Plaintiff Gloria Jean Jordan stopped taking Cymbalta.

102.   In or around January 2013, and within days of stopping Cymbalta, Plaintiff Gloria Jean Jordan experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Gloria Jean Jordan experienced extreme mood swings, electric shock-like sensations in her head, nightmares, sleep disturbance, insomnia, vertigo, dizziness, nausea and suicidal thoughts.

103.   If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Gloria Jean Jordan's physician would not have prescribed the drug to Plaintiff Jordan; Plaintiff Gloria Jean Jordan would have refused the drug; and/or Plaintiff Gloria Jean Jordan's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Gloria Jean Jordan's injuries and damages.

## VII.   PLAINTIFF PEARLIE MAE MADDOX

104.   At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to

prescribe Cymbalta and consumers to use it, including Plaintiff Pearlie Mae Maddox and her physicians.

105.    Plaintiff Pearlie Mae Maddox's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

106.    Plaintiff Pearlie Mae Maddox's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

107.    In or around early 2013, Plaintiff Pearlie Mae Maddox was prescribed Cymbalta by her physician, for treatment of depression.

108.    In or around late 2013, Plaintiff Pearlie Mae Maddox stopped taking Cymbalta.

109.    In or around 2013, and within one week of stopping Cymbalta, Plaintiff Pearlie Mae Maddox experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Pearlie Mae Maddox experienced extreme mood swings, agitation, irritability, and nausea.

110.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Pearlie Mae Maddox's physician would not have prescribed the drug to Plaintiff Maddox; Plaintiff Pearlie Mae Maddox would have refused the drug; and/or Plaintiff

Pearlie Mae Maddox's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Pearlie Mae Maddox's injuries and damages.

**VIII.   PLAINTIFF DENISE KAY VITAL**

111.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Denise Kay Vital and her physicians.

112.    Plaintiff Denise Kay Vital's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

113.    Plaintiff Denise Kay Vital's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

114.    In or around 2010, Plaintiff Denise Kay Vital was prescribed Cymbalta by her physician, for treatment of pain.

115.    In or around February 2014, Plaintiff Denise Kay Vital stopped taking Cymbalta.

116.    In or around February 2014, and within one day of stopping Cymbalta, Plaintiff Denise Kay Vital experienced severe and dangerous withdrawal symptoms upon attempting to

discontinue Cymbalta.  By way of example, Plaintiff Denise Kay Vital experienced extreme mood swings, irritability, agitation, electric shock-like sensations in the head, commonly called "brain zaps," nightmares, sleep disturbances, vertigo, dizziness, suicidal thoughts, nausea, and suffered from eleven strokes.

117.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Denise Kay Vital's physician would not have prescribed the drug to Plaintiff Vital; Plaintiff Denise Kay Vital would have refused the drug; and/or Plaintiff Denise Kay Vital's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Denise Kay Vital's injuries and damages.

118.    As a direct and proximate result of Lilly's aforementioned conduct, and as a result of the injuries and damages to Plaintiff Denise Kay Vital, her spouse / legal partner, Robert Vital, has been deprived of the love, companionship, comfort, affection, society, solace or moral support, protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and maintenance of the home, and has thereby sustained, and will continue to sustain, damages.

## IX.    PLAINTIFF WILLIAM GEORGE BOOKER

119.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff William George Booker and his physicians.

120.    Plaintiff William George Booker's use of the drug and consequent injuries and

damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

121.    Plaintiff William George Booker's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

122.    In or around 2011, Plaintiff William George Booker was prescribed Cymbalta by his physician, for treatment of depression and anxiety.

123.    In or around August 2011, Plaintiff William George Booker stopped taking Cymbalta.

124.    In or around August 2011, and within days of stopping Cymbalta, Plaintiff William George Booker experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff William George Booker experienced stomach problems, as well as blood pressure problems severe enough to visit the emergency room.  He was unexplainably angry and agitated, experiencing extreme mood swings, and a feeling of being unable to control his actions as though he was watching himself from outside of his body.

125.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff William George Booker's physician would not have prescribed the drug to Plaintiff Booker; Plaintiff William George Booker would have refused the drug; and/or Plaintiff William George Booker's physician would have been able to more adequately, accurately

and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff William George Booker's injuries and damages.

126.   As a direct and proximate result of Lilly's aforementioned conduct, and as a result of the injuries and damages to Plaintiff William George Booker, his spouse / legal partner, Nina Valentinovna Booker, has been deprived of the love, companionship, comfort, affection, society, solace or moral support, protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and maintenance of the home, and has thereby sustained, and will continue to sustain, damages.

## X.   PLAINTIFF BOBBI JEAN WOOD

127.   At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Bobbi Jean Wood and her physicians.

128.   Plaintiff Bobbi Jean Wood's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

129.   Plaintiff Bobbi Jean Wood's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

130.    In or around 2010, Plaintiff Bobbi Jean Wood was prescribed Cymbalta by her physician, for treatment of depression.

131.    In or around June 2013, Plaintiff Bobbi Jean Wood stopped taking Cymbalta.

132.    In or around June 2013, and within one day of stopping Cymbalta, Plaintiff Bobbi Jean Wood experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Bobbi Jean Wood experienced extreme mood swings, agitation, irritability, electric shock-like sensations in head, commonly called "brain zaps," anxiety, vertigo, dizziness, shaking, involuntary muscle spasms in her head, neck and tongue, and suicidal thoughts. Moreover, Plaintiff Bobbi Jean wood became violent towards her husband, attempted suicide, and required hospitalization.

133.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Bobbi Jean Wood's physician would not have prescribed the drug to Plaintiff Wood; Plaintiff Bobbi Jean Wood would have refused the drug; and/or Plaintiff Bobbi Jean Wood's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Bobbi Jean Wood's injuries and damages.

## XI.    PLAINTIFF GOLDIE FAYE ANDERSON

134.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Goldie Faye Anderson and her physicians.

135.   Plaintiff Goldie Faye Anderson's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

136.   Plaintiff Goldie Faye Anderson's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

137.   In or around 2009, Plaintiff Goldie Faye Anderson was prescribed Cymbalta by her physician, for treatment of pain and fibromyalgia.

138.   In or around early 2013, Plaintiff Goldie Faye Anderson stopped taking Cymbalta.

139.   In or around early 2013, and within days of stopping Cymbalta, Plaintiff Goldie Faye Anderson experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Goldie Faye Anderson experienced extreme mood swings, agitation, irritability, nightmares, sleep disturbances, vertigo, dizziness, and nausea.

140.   If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Goldie Faye Anderson's physician would not have prescribed the drug to Plaintiff Anderson; Plaintiff Goldie Faye Anderson would have refused the drug; and/or Plaintiff Goldie Faye Anderson's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Goldie

Faye Anderson's injuries and damages.

**XII.   PLAINTIFF JAMES CALDWELL**

141.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff James Caldwell and his physicians.

142.    Plaintiff James Caldwell's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

143.    Plaintiff James Caldwell's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

144.    In or around 2009, Plaintiff James Caldwell was prescribed Cymbalta by his physician, for treatment of depression.

145.    In or around February 2014, Plaintiff James Caldwell stopped taking Cymbalta.

146.    In or around February 2014, and within days of stopping Cymbalta, Plaintiff James Caldwell experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff James Caldwell experienced violent nightmares, sleep disturbance, insomnia, depression, pain, nausea, and fear of hurting his wife while he was asleep.

147.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff James Caldwell's physician would not have prescribed the drug to Plaintiff Caldwell; Plaintiff James Caldwell would have refused the drug; and/or Plaintiff James Caldwell's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff James Caldwell's injuries and damages.

## XIII.   PLAINTIFF CHRISTINA BAILEY

148.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Christina Bailey and her physicians.

149.    Plaintiff Christina Bailey's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

150.    Plaintiff Christina Bailey's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

151.    In or around 2013, Plaintiff Christina Bailey was prescribed Cymbalta by her

physician, for treatment of depression.

152.    In or around 2013, Plaintiff Christina Bailey stopped taking Cymbalta.

153.    In or around 2013, and within days of stopping Cymbalta, Plaintiff Christina Bailey experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta. By way of example, Plaintiff Christina Bailey experienced extreme mood swings, agitation, irritability, electric shock-like sensations in the head, commonly called "brain zaps," nightmares, sleep disturbance, insomnia, vertigo, dizziness, suicidal thoughts, nausea, and attempted suicide.

154.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Christina Bailey's physician would not have prescribed the drug to Plaintiff Bailey; Plaintiff Christina Bailey would have refused the drug; and/or Plaintiff Christina Bailey's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Christina Bailey's injuries and damages.

155.    As a direct and proximate result of Lilly's aforementioned conduct, and as a result of the injuries and damages to Plaintiff Christina Bailey, her spouse / legal partner, Robert Bailey, has been deprived of the love, companionship, comfort, affection, society, solace or moral support, protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and maintenance of the home, and has thereby sustained, and will continue to sustain, damages.

## XIV.   PLAINTIFF ROBERT BAILEY

156.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to

prescribe Cymbalta and consumers to use it, including Plaintiff Robert Bailey and his physicians.

157.   Plaintiff Robert Bailey's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

158.   Plaintiff Robert Bailey's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

159.   In or around 2012, Plaintiff Robert Bailey was prescribed Cymbalta by his physician, for treatment of depression.

160.   In or around 2013, Plaintiff Robert Bailey stopped taking Cymbalta.

161.   In or around 2013, and within days of stopping Cymbalta, Plaintiff Robert Bailey experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta. By way of example, Plaintiff Robert Bailey experienced extreme mood swings, agitation, irritability, nightmares, sleep disturbance, insomnia, vertigo, dizziness, and nausea.

162.   If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Robert Bailey's physician would not have prescribed the drug to Plaintiff Bailey; Plaintiff Robert Bailey would have refused the drug; and/or Plaintiff Robert Bailey's physician would have been able to more adequately, accurately and properly weigh and convey the

risks and benefits of the drug in a way as to avoid Plaintiff Robert Bailey's injuries and damages.

163.     As a direct and proximate result of Lilly's aforementioned conduct, and as a result of the injuries and damages to Plaintiff Robert Bailey, his spouse / legal partner, Christina Bailey, has been deprived of the love, companionship, comfort, affection, society, solace or moral support, protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and maintenance of the home, and has thereby sustained, and will continue to sustain, damages.

## XV.   PLAINTIFF PATRICIA ANN JACKSON

164.     At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Patricia Ann Jackson and her physicians.

165.     Plaintiff Patricia Ann Jackson's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

166.     Plaintiff Patricia Ann Jackson's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

167.     In or around 2011, Plaintiff Patricia Ann Jackson was prescribed Cymbalta by her

physician, for treatment of depression.

168.    In or around late 2013, Plaintiff Patricia Ann Jackson stopped taking Cymbalta.

169.    In or around late 2013, and within days of stopping Cymbalta, Plaintiff Patricia Ann Jackson experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Patricia Ann Jackson experienced extreme mood swings, agitation, irritability, electric shock-like sensations in her head, commonly called "brain zaps," nightmares, sleep disturbance, insomnia, vertigo, dizziness, and nausea.

170.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Patricia Ann Jackson's physician would not have prescribed the drug to Plaintiff Jackson; Plaintiff Patricia Ann Jackson would have refused the drug; and/or Plaintiff Patricia Ann Jackson's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Jackson's injuries and damages.

## XVI.   PLAINTIFF WENDY DENESE DANIELS

171.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Wendy Denese Daniels and her physicians.

172.    Plaintiff Wendy Denese Daniels's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that

fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

173.    Plaintiff Wendy Denese Daniels's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

174.    In or around 2004, Plaintiff Wendy Denese Daniels was prescribed Cymbalta by her physician, for treatment of depression.

175.    In or around 2009, Plaintiff Wendy Denese Daniels stopped taking Cymbalta.

176.    In or around 2009, and within days of stopping Cymbalta, Plaintiff Wendy Denese Daniels experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Wendy Denese Daniels experienced agitation, irritability, sleep disturbance, vertigo, dizziness, suicidal thoughts and suicide attempts, nausea, paranoia, hallucinations, and became unable to leave her home.

177.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Wendy Denese Daniels's physician would not have prescribed the drug to Plaintiff Daniels; Plaintiff Wendy Denese Daniels would have refused the drug; and/or Plaintiff Wendy Denese Daniels's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Wendy Denese Daniels's injuries and damages.

### XVII.  PLAINTIFF ARTHUR LEE DAVIS

178.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Arthur Lee Davis and his physicians.

179.    Plaintiff Arthur Lee Davis's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

180.    Plaintiff Arthur Lee Davis's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

181.    In or around 2012, Plaintiff Arthur Lee Davis was prescribed Cymbalta by his physician, for treatment of fibromyalgia.

182.    In or around late 2013, Plaintiff Arthur Lee Davis stopped taking Cymbalta.

183.    In or around late, and within days of stopping Cymbalta, Plaintiff Arthur Lee Davis experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta. By way of example, Plaintiff Arthur Lee Davis experienced extreme mood swings, agitation, irritability, panic attacks, electric shock-like sensations in the head, commonly called "brain zaps," vertigo, sweating, nausea, nightmares, insomnia, anger, and suicidal thoughts.

184.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Arthur Lee Davis's physician would not have prescribed the drug to Plaintiff Davis; Plaintiff Arthur Lee Davis would have refused the drug; and/or Plaintiff Arthur Lee Davis's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Arthur Lee Davis's injuries and damages.

**XVIII. PLAINTIFF RONNIE DAVIS**

185.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Ronnie Davis and his physicians.

186.    Plaintiff Ronnie Davis's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

187.    Plaintiff Ronnie Davis's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

188.    In or around 2010, Plaintiff Ronnie Davis was prescribed Cymbalta by (his/her)

physician, for treatment of diabetic nerve pain.

189.    In or around December 2011, Plaintiff Ronnie Davis stopped taking Cymbalta.

190.    In or around December 2011, and within days of stopping Cymbalta, Plaintiff Ronnie Davis experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Ronnie Davis experienced extreme mood swings, agitation, irritability, electric shock-like sensations in his head, commonly called "brain zaps," nightmares, sleep disturbance, insomnia, and suicidal thoughts.

191.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Ronnie Davis's physician would not have prescribed the drug to Plaintiff Davis; Plaintiff Ronnie Davis would have refused the drug; and/or Plaintiff Ronnie Davis's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Ronnie Davis's injuries and damages.

## XIX.   PLAINTIFF YOLANDA NECOLE JORDAN

192.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yolanda Necole Jordan and her physicians.

193.    Plaintiff Yolanda Necole Jordan's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of

Cymbalta's withdrawal symptoms.

194.    Plaintiff Yolanda Necole Jordan's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

195.    In or around January 2012, Plaintiff Yolanda Necole Jordan was prescribed Cymbalta by her physician, for treatment of her psychological condition.

196.    In or around December 2012, Plaintiff Yolanda Necole Jordan stopped taking Cymbalta.

197.    In or around December 2012, and within days of stopping Cymbalta, Plaintiff Yolanda Necole Jordan experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Yolanda Necole Jordan experienced extreme mood swings, agitation, irritability, electric shock-like sensations in her head, commonly called "brain zaps," nightmares, sleep disturbance, insomnia, vertigo, dizziness, suicidal thoughts and nausea.

198.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Yolanda Necole Jordan's physician would not have prescribed the drug to Plaintiff Jordan; Plaintiff Yolanda Necole Jordan would have refused the drug; and/or Plaintiff Yolanda Necole Jordan's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Yolanda Necole Jordan's injuries and damages.

## XX. PLAINTIFF SAMUEL EARL SMITH

199.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Samuel Earl Smith and his physicians.

200.    Plaintiff Samuel Earl Smith's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

201.    Plaintiff Samuel Earl Smith's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

202.    In or around 2008, Plaintiff Samuel Earl Smith was prescribed Cymbalta by (his/her) physician, for treatment of depression and anxiety.

203.    In or around December 2012, Plaintiff Samuel Earl Smith stopped taking Cymbalta.

204.    In or around December 2012, and within days of stopping Cymbalta, Plaintiff Samuel Earl Smith experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Samuel Earl Smith experienced extreme mood swings, agitation, irritability, electric shock-like sensations in his head, commonly called "brain zaps,"

tingling in his fingers, nightmares, sleep disturbance, insomnia, vertigo, dizziness, suicidal thoughts, hostility, jitteriness, and began hitting his wife in his sleep.

205.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Samuel Earl Smith's physician would not have prescribed the drug to Plaintiff Smith; Plaintiff Samuel Earl Smith would have refused the drug; and/or Plaintiff Samuel Earl Smith's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Samuel Earl Smith's injuries and damages.

**XXI.   STEPHEN THOMAS MAGEE**

206.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Stephen Thomas Magee and his physicians.

207.    Plaintiff Stephen Thomas Magee's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

208.    Plaintiff Stephen Thomas Magee's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that

fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

209.    In or around 2009, Plaintiff Stephen Thomas Magee was prescribed Cymbalta by his physician, for treatment of depression.

210.    In or around January 2012, Plaintiff Stephen Thomas Magee stopped taking Cymbalta.

211.    In or around January 2012, and within days of stopping Cymbalta, Plaintiff Stephen Thomas Magee experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Stephen Thomas Magee experienced extreme mood swings, agitation, irritability, and electric shock-like sensations in his head, commonly called "brain zaps."

212.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Stephen Thomas Magee's physician would not have prescribed the drug to Plaintiff Magee; Plaintiff Stephen Thomas Magee would have refused the drug; and/or Plaintiff Stephen Thomas Magee's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Stephen Thomas Magee's injuries and damages.

## XXII.  PLAINTIFF SANDRA JEAN MENDOZA

213.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Sandra Jean Mendoza and her physicians.

214.    Plaintiff Sandra Jean Mendoza's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

215.    Plaintiff Sandra Jean Mendoza's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

216.    In or around June 2011, Plaintiff Sandra Jean Mendoza was prescribed Cymbalta by her physician, for treatment of anxiety and depression.

217.    In or around January 2013, Plaintiff Sandra Jean Mendoza stopped taking Cymbalta.

218.    In or around January 2013, and within days of stopping Cymbalta, Plaintiff Sandra Jean Mendoza experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Sandra Jean Mendoza experienced extreme mood swings, agitation, irritability, electric shock-like sensations in her head, commonly called "brain zaps," nightmares, sleep disturbance, insomnia, vertigo, dizziness, suicidal thoughts, nausea, and required hospitalization.

219.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Sandra Jean Mendoza's physician would not have prescribed the drug to Plaintiff Mendoza; Plaintiff Sandra Jean Mendoza would have refused the drug; and/or

Plaintiff Sandra Jean Mendoza's physician would have been able to more adequately, accurately and

properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Sandra

Jean Mendoza's injuries and damages.

220. As a direct and proximate result of Lilly's aforementioned conduct, and as a result of

the injuries and damages to Plaintiff Sandra Jean Mendoza, her spouse / legal partner, Jose Mendoza,

has been deprived of the love, companionship, comfort, affection, society, solace or moral support,

protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and

maintenance of the home, and has thereby sustained, and will continue to sustain, damages.

## XXIII. PLAINTIFF LISA DENISE SMITH

221. At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including

its defective design of Cymbalta and its failure to fully and accurately warn about the frequency,

severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to

prescribe Cymbalta and consumers to use it, including Plaintiff Lisa Denise Smith and her

physicians.

222. Plaintiff Lisa Denise Smith's use of the drug and consequent injuries and damages

were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully

and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms.

223. Plaintiff Lisa Denise Smith's use of the drug and consequent injuries and damages

were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully

and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms.

224.    In or around January 2009, Plaintiff Lisa Denise Smith was prescribed Cymbalta by her physician, for treatment of depression.

225.    In or around January 2013, Plaintiff Lisa Denise Smith stopped taking Cymbalta.

226.    In or around January 2013, and within days of stopping Cymbalta, Plaintiff Lisa Denise Smith experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Lisa Denise Smith experienced extreme mood swings, agitation, irritability, electric shock-like sensations in her head, commonly called "brain zaps," nightmares, sleep disturbance, insomnia, vertigo, dizziness, suicidal thoughts, and nausea.

227.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Lisa Denise Smith's physician would not have prescribed the drug to Plaintiff Smith; Plaintiff Lisa Denise Smith would have refused the drug; and/or Plaintiff Lisa Denise Smith's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Lisa Denise Smith's injuries and damages.

## XXIV. PLAINTIFF BEVERLY THURMAN

228.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Beverly Thurman and her physicians.

229.    Plaintiff Beverly Thurman's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

230.    Plaintiff Beverly Thurman's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

231.    In or around January 2010, Plaintiff Beverly Thurman was prescribed Cymbalta by her physician, for treatment of seizures.

232.    In or around January 2013, Plaintiff Beverly Thurman stopped taking Cymbalta.

233.    In or around January 2013, and within days of stopping Cymbalta, Plaintiff Beverly Thurman experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta.  By way of example, Plaintiff Beverly Thurman experienced extreme mood swings, agitation, irritability, electric shock-like sensations in her head, commonly called "brain zaps," nightmares, sleep disturbance, insomnia, vertigo, dizziness, and nausea.

234.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Beverly Thurman's physician would not have prescribed the drug to Plaintiff Thurman; Plaintiff Beverly Thurman would have refused the drug; and/or Plaintiff Beverly Thurman's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Beverly Thurman's injuries and damages.

235.    As a direct and proximate result of Lilly's aforementioned conduct, and as a result of the injuries and damages to Plaintiff Beverly Thurman, her spouse / legal partner, Robert Thurman, has been deprived of the love, companionship, comfort, affection, society, solace or moral support, protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and maintenance of the home, and has thereby sustained, and will continue to sustain, damages.

**XXV.  PLAINTIFF J. DAVID ADAMCHICK**

236.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff J. David Adamchick and his physicians.

237.    Plaintiff J. David Adamchick's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

238.    Plaintiff J. David Adamchick's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

239.    In or around January 2007, Plaintiff J. David Adamchick was prescribed Cymbalta by his physician.

240.    In or around January 2013, Plaintiff J. David Adamchick attempted to cease ingestion of Cymbalta.

241.    Plaintiff J. David Adamchick experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta. By way of example, Plaintiff J. David Adamchick experienced headaches, fever, depression, anxiety, and attempted suicide.

242.    In or around March 2013, Plaintiff J. David Adamchick again commenced ingesting Cymbalta due to the fact that the withdrawal effects were too painful.

243.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff J. David Adamchick's physician would not have prescribed the drug to Plaintiff Adamchick; Plaintiff  J. David Adamchick would have refused the drug; and/or Plaintiff J. David Adamchick's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff J. David Adamchick's injuries and damages.

**XXVI. PLAINTIFF JOYCE LIGHTY**

244.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Joyce Lighty and Plaintiff Joyce Lighty's physicians.

245.    Plaintiff Joyce Lighty's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and

accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

246.    Plaintiff Joyce Lighty's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

247.    In or around 2014, Plaintiff Joyce Lighty was prescribed Cymbalta by her physician.

248.    In or around 2014, Plaintiff Joyce Lighty attempted to cease ingestion of Cymbalta.

249.    Plaintiff Joyce Lighty experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including mood swings, nausea, dizziness, vertigo, insomnia, and electric shocks to the head.

250.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Joyce Lighty's physician would not have prescribed the drug to Plaintiff Lighty; Plaintiff Joyce Lighty would have refused the drug; and/or Plaintiff Joyce Lighty's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Joyce Lighty's injuries and damages.

**XXVII. PLAINTIFF LORETTA PRESSLEY**

251.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Loretta Pressley and Plaintiff Loretta

Pressley's physicians.

252.    Plaintiff Loretta Pressley's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

253.    Plaintiff Loretta Pressley's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

254.    In or around 2011, Plaintiff Loretta Pressley was prescribed Cymbalta by her physician.

255.    In or around February 2012, Plaintiff Loretta Pressley attempted to cease ingestion of Cymbalta.

256.    Plaintiff Loretta Pressley experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme agitation, weakness, and falling down.

257.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Loretta Pressley's physician would not have prescribed the drug to Plaintiff Pressley; Plaintiff Loretta Pressley would have refused the drug; and/or Plaintiff Loretta Pressley's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Loretta Pressley's injuries and

damages.

## XXVIII. PLAINTIFF MELODIE REHM

258.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Melodie Rehm and Plaintiff Melodie Rehm's physicians.

259.    Plaintiff Melodie Rehm's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

260.    Plaintiff Melodie Rehm's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

261.    In or around May 2011, Plaintiff Melodie Rehm was prescribed Cymbalta by her physician.

262.    In or around January 2013, Plaintiff Melodie Rehm attempted to cease ingestion of Cymbalta.

263.    Plaintiff Melodie Rehm experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including slurred speech, inability to walk, and panic attacks.

264.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Melodie Rehm's physician would not have prescribed the drug to Plaintiff Rehm; Plaintiff Melodie Rehm would have refused the drug; and/or Plaintiff Melodie Rehm's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Melodie Rehm's injuries and damages.

## XXIX.  PLAINTIFF ERICA SHUNOSKI

265.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Erica Shunoski and Plaintiff Erica Shunoski's physicians.

266.    Plaintiff Erica Shunoski's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

267.    Plaintiff Erica Shunoski's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

268.    In or around September 2012, Plaintiff Erica Shunoski was prescribed Cymbalta by her physician.

269.    In or around February 2013, Plaintiff Erica Shunoski attempted to cease ingestion of Cymbalta.

270.    Plaintiff Erica Shunoski experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including dizziness, nausea, fatigue, severe heart palpitations, and electric shock sensations in the head and body.

271.    If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Erica Shunoski's physician would not have prescribed the drug to Plaintiff Shunoski; Plaintiff Erica Shunoski would have refused the drug; and/or Plaintiff Erica Shunoski's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Erica Shunoski's injuries and damages.

## XXX.   PLAINTIFF CARLA TURNER

272.    At all times relevant, Lilly engaged in willful, wanton, and reckless conduct, including its defective design of Cymbalta and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Carla Turner and Plaintiff Carla Turner's physicians.

273.    Plaintiff Carla Turner's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms.

274.   Plaintiff Carla Turner's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms.

275.   In or around September 2012, Plaintiff Carla Turner was prescribed Cymbalta by her physician.

276.   In or around February 2013, Plaintiff Carla Turner attempted to cease ingestion of Cymbalta.

277.   Plaintiff Carla Turner experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including dizziness and seeing shadows.

278.   If Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, Plaintiff Carla Turner's physician would not have prescribed the drug to Plaintiff Turner; Plaintiff Carla Turner would have refused the drug; and/or Plaintiff Carla Turner's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff Carla Turner's injuries and damages.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

279.   Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

280.   Lilly owed to Plaintiffs, and to other consumers and patients, a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply and/or distribution

of Cymbalta, including the duty to ensure that the product carries adequate instructions and warnings and that the product does not cause users to suffer from unreasonable, dangerous side effects.

281.     Lilly was negligent in the design, manufacture, testing, advertising, marketing, promoting, labeling, supply, and sale of Cymbalta in that it:

a.  Failed to provide proper warnings that fully and accurately inform users and health care professionals about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms;

b.  Failed to provide warnings that Cymbalta could cause users to become physically dependent on the drug;

c.  Failed to provide adequate training and instructions to users and health care professionals regarding appropriate methods for stopping Cymbalta;

d.  Misled users by suggesting that Cymbalta withdrawal was rare;

e.  Failed to warn that the risks associated with Cymbalta exceeded the risks of other comparable forms of treatment options;

f.  Failed to warn of the potential duration of withdrawal symptoms associated with Cymbalta;

g.  Misrepresented the severity of symptoms associated with withdrawal;

h.  Negligently designed Cymbalta in a way that it knew or should have known would cause withdrawal and physical dependency and would prevent a patient from being able to safely wean off the medication;

i.  Negligently marketed Cymbalta without disclosing material information about the frequency, severity, and duration of withdrawal symptoms, despite the fact that the risk of withdrawal symptoms was so high and the benefits of the drug were so questionable that no reasonable pharmaceutical company, exercising due care, would have placed it on the market;

j.  Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed, material facts regarding the safety of Cymbalta to Plaintiffs, the public, and the medical community;

k.  Failed to comply with its post-manufacturing duty to warn that Cymbalta was being promoted, distributed, and prescribed without adequate warnings that fully and accurately inform users and physicians of the true frequency, severity, and/or duration of potential withdrawal symptoms; and

1. Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for Plaintiffs' rights and safety.

282. Despite the fact that Lilly knew, or should have known, that Cymbalta caused frequent and severe withdrawal symptoms, Lilly continued to market Cymbalta to consumers, including Plaintiffs, without adequate instructions for stopping Cymbalta and without adequate warnings about the frequency, severity, and/or duration of the withdrawal symptoms. Lilly knew, or should have known, that Cymbalta users would suffer foreseeable injuries as a result of its failure to exercise ordinary care, as described above. Lilly knew or should have known that Cymbalta was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

283. Had Lilly provided adequate instructions for the proper method for stopping Cymbalta and/or adequate warnings regarding the frequency, severity, and/or duration of its withdrawal symptoms, Plaintiffs' injuries would have been avoided.

284. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered significant injuries as set forth herein.

285. WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SECOND CAUSE OF ACTION

## STRICT PRODUCT LIABILITY – DESIGN DEFECT

286. Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

287. Lilly is, and was at all times relevant herein, engaged in the business of designing, testing, manufacturing, and promoting prescription medications, including Cymbalta, to citizens of the States of California, Alabama, Arkansas, Kentucky, Pennsylvania, South Carolina, Tennessee, and Texas, including all the Plaintiffs.

288.     Lilly manufactured, marketed, promoted, and sold a product that was merchantable and/or reasonably suited to the use intended.  Cymbalta was expected to, and did, reach Plaintiffs without substantial change in the condition in which it was sold.  Its condition when sold was the proximate cause of the injuries sustained by Plaintiffs.

289.     Lilly introduced a product into the stream of commerce that is defective in design, in that the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by Lilly, and Lilly's omission of the alternative design renders the product not reasonably safe.  The harm of Cymbalta's design outweighs any benefit derived therefrom.  The unreasonably dangerous nature of Cymbalta caused serious harm to Plaintiffs.  Lilly placed Cymbalta into the stream of commerce with wanton and reckless disregard for public safety.

290.     Lilly knew or should have known that physicians and other health care providers began commonly prescribing Cymbalta as a safe product despite the fact that the design of Cymbalta pills, as delayed-release capsules of beads at 20, 30 and 60 mg doses only, along with the instruction to swallow them whole, prevents users from being able to properly taper (gradual decrease in dosage) from Cymbalta in order to avoid or reduce withdrawal symptoms.  Cymbalta users such as Plaintiff are thus unable to avoid the danger of Lilly's design upon cessation of treatment.  Moreover, Lilly knew that the likelihood of experiencing withdrawal symptoms (such that gradual tapering would be required) is significant.

291.     Lilly could have redesigned Cymbalta at a reasonable cost in order to allow users to taper gradually and thus with less risk of injury.  The risk of harm inherent in Lilly's design of Cymbalta capsules outweighs the utility of its design.  There are other antidepressant medications and similar drugs on the market with safer alternative designs with respect to patients' and physicians' ability to gradually decrease the dosage.

COMPLAINT

292.    As a direct and proximate result of Lilly's widespread promotional activities, physicians commonly prescribe Cymbalta as safe.

293.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered significant injuries as set forth herein.  Plaintiffs have incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiffs have required and will continue to require healthcare and services and have incurred, and will continue to incur medical and related expenses.  Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

294.    WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## THIRD CAUSE OF ACTION: STRICT PRODUCT LIABILITY
## FAILURE TO WARN

295.    Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

296.    Lilly researched, tested, developed, designed, licensed, manufactured, packaged, inspected, labeled, distributed, sold, marketed, promoted and/or introduced Cymbalta into the stream of commerce and in the course of same, directly advertised and/or marketed Cymbalta to consumers or persons responsible for consumers, and therefore, had a duty to warn Plaintiffs and Plaintiffs' physicians of the risks associated with stopping Cymbalta, which Lilly knew or should have known are inherent in the use of Cymbalta.

297.    Lilly had a duty to warn users and physicians fully and accurately of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms which it knew or should have known, can be caused by the discontinuation of Cymbalta and/or are associated with Cymbalta

discontinuation as explained throughout this Complaint.  Furthermore, Lilly had a duty to provide users and physicians with adequate instructions for stopping Cymbalta.

298.    Cymbalta was under the exclusive control of Lilly and was neither accompanied by adequate instructions for stopping Cymbalta nor accompanied by adequate warnings regarding the frequency, severity, and/or duration of symptoms associated with the discontinuation of Cymbalta. The information given to consumers and physicians did not properly instruct users and physicians on how to stop Cymbalta and did not accurately reflect the risk, incidence, symptoms, scope, or severity of the withdrawal symptoms as compared to other similar products available in the market, which possessed lower risk of such symptoms.  The promotional activities of Lilly further diluted and/or minimized any warnings that were provided with the product.

299.    Lilly misled users and health care professionals as to the severity, frequency, and/or duration of Cymbalta withdrawal symptoms in order to foster and heighten sales of the product.

300.    Cymbalta was defective and unreasonably dangerous when it left the possession of Lilly in that it contained instructions insufficient to fully inform users and physicians on how to stop Cymbalta and that it contained warnings insufficient to alert Plaintiffs to the dangerous risks and reactions associated with it, including but not limited to severe, debilitating withdrawal symptoms. Even though Lilly knew or should have known the risks associated with Cymbalta, it failed to provide adequate instructions and warnings.

301.    The foreseeable risks of withdrawal-related harm posed by Cymbalta could have been reduced or avoided by the provision of reasonable instructions or warnings by Lilly.  Lilly's omission of reasonable instructions or warnings rendered Cymbalta not reasonably safe.

302.    Plaintiffs used Cymbalta as intended or in a reasonably foreseeable manner as alleged in this Complaint.

COMPLAINT

303.    Plaintiffs could not have discovered any defect in the drug through the exercise of reasonable care as the information about the frequency, severity, and duration of withdrawal risks was not readily obtainable by a lay person or medical professional.

304.    Lilly, as manufacturer of Cymbalta and other pharmaceutical prescription drugs, is held to the level of knowledge of an expert in the field, and further, Lilly had knowledge of the dangerous risks associated with the discontinuation of Cymbalta.

305.    Plaintiffs did not have the same knowledge as Lilly and no adequate warning was communicated to her physicians.

306.    Lilly had a continuing duty to warn users, including Plaintiffs and their physicians, and the medical community of the dangers associated with Cymbalta discontinuation.  By negligently and wantonly failing to provide adequate instructions and failing to adequately warn of the withdrawal symptoms associated with Cymbalta discontinuation, Lilly breached its duty.

307.    Although Lilly knew or should have known of Cymbalta's withdrawal symptoms, it continued to design, manufacture, market, and sell the drug without providing adequate warnings or instructions concerning the use of the drug in order to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harms posed by the drug.

308.    In addition, Lilly's conduct in the packaging, warning, marketing, advertising, promoting, distribution, and sale of the drug was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers, including the Plaintiffs.

309.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered injuries as set forth herein.

310.    WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FOURTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

311.    Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

312.    Lilly owed a duty to Plaintiffs and their physicians to convey and communicate truthful and accurate information about Cymbalta and its material risks.

313.    Lilly represented to Plaintiffs, their physicians, and other members of the public and the medical community that Cymbalta was safe for use and that any withdrawal symptoms were no different, no worse, and no more frequent, than those of other similar products on the market.  These representations were, in fact, false.  Lilly's representations on the Cymbalta label suggested that withdrawal was rare, or that withdrawal symptoms occurred at a rate of approximately 1% or 2%, without mentioning the overall percentage of users who will experience withdrawal symptoms, which Lilly's own studies showed to be, at minimum, 44%.

314.    Lilly was negligent in failing to exercise due care in making the aforesaid representations.

315.    Lilly had a pecuniary interest in making said representations, which were made in order to expand sales and increase revenue from Cymbalta.

316.    At the time said representations were made by Lilly, at the time Plaintiffs and their physicians took the actions herein alleged, Plaintiffs and their physicians were ignorant of the falsity of Lilly's representations and reasonably believed them to be true.  In justifiable reliance upon said representations, Plaintiffs and their physicians were induced to, and did, use Cymbalta and attempt to

discontinue Cymbalta.  If Plaintiffs and their physicians had known the actual facts, Plaintiffs' injuries would have been avoided because Plaintiffs' physician would not have prescribed the drug, Plaintiffs would not have taken the drug, and/or the risk would have been conveyed to Plaintiffs in a way so as to alter the prescription and avoid Plaintiffs' injuries.

317.    The reliance of Plaintiffs and their physicians upon Lilly's representations was justified because the representations were made by individuals and entities who appeared to be in a position to know the true facts relating to risks associated with Cymbalta.

318.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered pecuniary losses including but not limited to past and future medical and related expenses.

319.    WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FIFTH CAUSE OF ACTION
## FRAUD

320.    Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

321.    As the United States Supreme Court stated in *Wyeth v. Levine*, "…it has remained a central premise of federal drug regulation that the manufacturer [of a prescription drug, such as Cymbalta] bears responsibility for the content of its label at all times.  It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market."  555 U.S. 555, 571 (2009).

322.    Lilly committed fraud by actively concealing material adverse information that was in its possession from its labeling and marketing of Cymbalta, including but not limited to, concealing the true frequency, severity, and duration of Cymbalta's withdrawal side effects and falsely

represented the withdrawal risk associated with Cymbalta.  The specifics of these false representations are contained in this Complaint.

323.    Lilly, through its clinical trial data, knew that, when it made the misrepresentations and/or omissions set forth herein, they were false, that patients and medical professionals would rely upon its misrepresentations and omissions, and that the misrepresentations were intended to cause patients like Plaintiffs to purchase and ingest Cymbalta.

324.    The specific acts of Lilly include the following:

a.   Fraudulently suggesting that the withdrawal risk is rare, or occurred at a rate of approximately one (1) percent, when the overall rate of patients experiencing withdrawal, according to Lilly's own clinical trials, is high (at least 44.3% to 50%).  Furthermore, an analysis of the data from Lilly's clinical trials reveals, with statistically significant results, that in comparison to stopping a placebo, stopping Cymbalta elevated the risk of specific withdrawal symptoms as much as 23-fold (i.e., nausea 23-fold, dizziness 17-fold, paresthesia 11-fold, irritability 9-fold, nightmares 8-fold, headaches 7-fold, and vomiting 4-fold);

b.   Fraudulently omitting material information in its labeling and marketing concerning the severity of Cymbalta withdrawal including the fact that, in Lilly's clinical trials, between 9.6% and 17.2% suffered severe withdrawal (approximately 50% suffered moderate withdrawal);

c.   Fraudulently omitting material information in its labeling and marketing concerning the duration of Cymbalta withdrawal.  In fact, more than 50% of patients in the Cymbalta clinical trials continued to suffer from withdrawal symptoms two weeks after coming off the drug.  Lilly did not monitor withdrawal beyond two weeks.  Lilly was well aware that withdrawal symptoms could be protracted.  For instance, the Cymbalta Summary of Product Characteristics" (SmPC) in Europe stated that, "in some individuals [withdrawal symptoms] may be prolonged (2-3 months or more)."  The Practice Guideline for the Treatment of Patients With Major Depressive Disorder, Third Edition, published in 2010 (in which at least three Lilly consultants were on the working group and review panel) states under "Discontinuation syndrome" that "some patients do experience **more protracted** discontinuation syndromes, particularly those treated with paroxetine [Paxil]" and "as with SSRIs, abrupt discontinuation of SNRIs should be avoided whenever possible.  Discontinuation symptoms, **which are sometimes protracted**, are more likely to occur with venlafaxine [Effexor] (and, by implication devenlafaxine [Pristiq]) than duloxetine [Cymbalta] (100) and may necessitate a slower downward titration regimen or change to fluoxetine."  Given that Cymbalta's half-life falls between Effexor's and Paxil's – Effexor having the shortest, Cymbalta the second and Paxil the third – the Guideline is artfully worded;

COMPLAINT

d.  Purposefully failing to use systematic monitoring with a withdrawal symptom checklist in the Cymbalta studies underlying Perahia's analysis, whereas in earlier Lilly-sponsored studies comparing Prozac to Paxil, Zoloft, and Effexor, Lilly systematically monitored withdrawal using a symptom checklist.  Lilly was well aware of the withdrawal risk because it had orchestrated a marketing campaign differentiating Prozac from competitor antidepressants based on Prozac's comparatively long half-life.  In fact, based on Cymbalta's half-life (the second shortest half-life between Effexor and Paxil), one would expect the true risk of withdrawal to be in a range between 66% and 78%.  *See* Glenmullen, The Antidepressant Solution – A Step-by-Step Guide to Safely Overcoming Antidepressant Withdrawal, Dependence, and "Addiction" (2005);

e.  Because Cymbalta's half-life is the second shortest and the closest to Effexor's, Lilly must have recognized that the risk of Cymbalta withdrawal was substantial, as confirmed by its own clinical trial data, and likely much worse as explained above.  However, rather than being forthcoming about this important risk, Lilly instead chose to obscure the risk by using misleading language in its labeling and marketing;

f.  Lilly obscured Cymbalta's true withdrawal risks by deflecting attention away from the Cymbalta-specific clinical trial data showing a clear and significant risk and focusing instead on other SSRIs and SNRIs.  For instance, Lilly's label stated "During marketing of other SSRIs and SNRIs … there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt …"   Lilly's use of "spontaneous" reports from "other SSRIs or SNRIs" is misleading given that approximately 40% to 50% of patients in Lilly's own clinical trials of Cymbalta reported adverse events.  In using this language, Lilly misleadingly suggests that the withdrawal risks associated with other SSRIs and SNRIs are worse than Cymbalta's risks, which is the opposite of the truth – Cymbalta is one of the worst;

g.  In addition to failing to warn about these known risks, Lilly utilized paid Key Opinion Leaders ("KOLs") to endorse the safety and efficacy of Cymbalta and assure prescribing doctors that Cymbalta's withdrawal risks were not as frequent, severe or protracted as they really are.  Lilly did this through medical journal articles, treatment guidelines and medical seminars.  For instance, Alan F. Schatzberg, a Lilly consultant and KOL who researched the phenomenon of antidepressant withdrawal as part of Lilly's campaign to promote Prozac in the 1990s, *see* paragraph 18 *supra*, wrote an article titled "Antidepressant Discontinuation Syndrome: Consensus Panel Recommendations for Clinical Management and Additional Research," J. Clin Psychiatry, 2006; 67 (suppl 4), two years after Cymbalta came on the market.  However, the article makes no mention of Cymbalta withdrawal or the fact that Lilly's own trials established withdrawal risks that were greater than those Lilly chose to include in the Cymbalta label;

h.  Similarly, the American Psychiatric Publishing Textbook of Psychiatry, Fifth Edition with a Foreword written by the same Lilly consultant and KOL, Dr. Schatzberg, published in 2008, makes no mention of Cymbalta nor the frequency, severity or duration of Cymbalta withdrawal. Indeed, the text states:

Discontinuation symptoms appear to occur most commonly after discontinuation of short-half-life serotonergic drugs (Coupland et al. 1996), such as fluvoxamine [Luvox], paroxetine [Paxil], and venlafaxine [Effexor].

There is no mention of Cymbalta although it had been on the market for four years and has a shorter-half than either Luvox or Paxil.  Indeed, it had the second shortest half-life next to Effexor;

i.   Lilly also appears to have engaged in selective and biased publication of its clinical trials of Cymbalta.   In a recent study published in the New England Journal of Medicine, researchers obtained clinical trials for antidepressants (including Cymbalta) that had been submitted to the FDA and compared them with studies that had been published.  The authors found that there was a "bias towards the publication of positive results" and that, "according to the published literature, it appeared that 94% of the trials conducted were positive.  By contrast, the FDA analysis shows that 51% were positive." The authors found that, as a result of such selective publication, the published literature conveyed a misleading impression of Cymbalta's efficacy resulting in an apparent effect-size that was 33% larger than the effect size derived from the full clinical trial data. *See* Erick H. Turner et al., Selective Publication of Antidepressant Trials and Its Influence on Apparent Efficacy, 358 NEW ENG. J. MED. 252 (2008).

325.   When the above representations and/or omissions were made by Lilly, it knew those representations and/or omissions to be false, or willfully and wantonly and recklessly disregarded whether the representations and/or omissions were true.  These representations and/or omissions were made by Lilly with the intent of defrauding and deceiving the public and the prescribing medical community and with the intent of inducing the public to take Cymbalta and the medical community (including Plaintiff's doctor) to recommend, prescribe, and dispense Cymbalta to their patients without adequate warning.

326.   At the time the aforementioned representations or omissions were made by Lilly, and at the time Plaintiff purchased and began to ingest Cymbalta, Plaintiff was unaware of the falsity of Lilly's representations and/or omissions and reasonably relied upon Lilly's representations and omissions.

327.   In reliance upon Lilly's representations and/or omissions, Plaintiff was induced to take Cymbalta and suffered significant withdrawal side effects.

328.    Lilly's motive in failing to advise physicians and the public of Cymbalta's withdrawal risks was financial gain along with its fear that, if accompanied by proper and adequate information, Cymbalta would lose its share of the antidepressant market.

329.    At all times herein mentioned, the actions of Lilly, its agents, servants, and/or employees were wanton, grossly negligent, and reckless and demonstrated a complete disregard and reckless indifference to the safety and welfare of Plaintiff in particular and to the general public in that Lilly did willfully and knowingly place the dangerous and defective drug Cymbalta on the market with the specific knowledge that it would be sold to, prescribed for, and used by members of the public and without adequate instructions for use.

330.    Punitive damages would be particularly appropriate for Lilly in this case given that fraud and concealment appear to be a part of its modus operandi.  Since the 1980s, Lilly has had an ongoing history of concealing serious side effects associated with its drugs and illegally promoting its drugs.  For example, in 1985, Lilly and one of its officers pled guilty to multiple criminal counts of violating the Food Drug and Cosmetic Act ("FDCA") arising out of Lilly's concealment of serious liver and kidney dysfunctions associated with its arthritis drug Oraflex.  In 2009, Lilly agreed to plead guilty and pay $1.415 billion to the federal government for illegally promoting Zyprexa.  This resolution included a criminal fine of $515 million, which, at the time, was the largest settlement ever in a health care case, and the largest criminal fine for an individual corporation ever imposed in a United States criminal prosecution of any kind.

331.    At *all tim*es relevant herein, Lilly's conduct was malicious, fraudulent, and oppressive toward Plaintiff in particular and the public generally, and Lilly conducted itself in a willful, wanton, and reckless manner.  Despite Lilly's specific knowledge regarding Cymbalta's withdrawal risks as set forth above, Lilly deliberately recommended, manufactured, produced, marketed, sold, distributed, merchandised, labeled, promoted, and advertised Cymbalta as being safe, with minimal withdrawal risks.

332.    All of the foregoing constitutes an utter, wanton, and conscious disregard of the rights and safety of a large segment of the public.  Thus, Lilly is guilty of reckless, willful, and wanton acts and omissions which evidence a total and conscious disregard for the safety of Plaintiff and others which proximately caused the injuries described herein.  Therefore, Plaintiff requests punitive and exemplary damages in an amount to be determined at trial to deter Lilly from continuing its conscious disregard of the rights and safety of the public at large and to set an example so Lilly – as well as other similarly situated drug manufacturers – will refrain from acting in a manner that is wanton, malicious, and in utter, conscious disregard of the rights of a large segment of the public.

333.    As a direct and proximate result of Lilly's false representations and/or omissions, Plaintiff has suffered serious injury, incurred and will in the future incur expenses, lost income and sustained other damages, including but not limited to pain and suffering, emotional distress, sorrow, anguish, stress, shock and mental suffering.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

334.    Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

335.    Lilly made numerous representations, descriptions, and promises to Plaintiffs regarding the frequency, severity and/or duration of withdrawal symptoms caused by ceasing to take Cymbalta.  Accordingly, Lilly expressly warranted that Cymbalta had a low or rare incidence of withdrawal symptoms.

336.    As described herein, Plaintiffs suffered injuries as a direct and proximate result of their discontinuation of Cymbalta.

337.    At the time of Plaintiffs' use of Cymbalta and resulting injuries, the Cymbalta he/she was taking was in essentially the same condition as when it left the control and possession of Lilly.

338.     At all times relevant, the Cymbalta received and used by Plaintiffs were not fit for the ordinary purposes for which it is intended to be used in that, *inter alia*, it posed a higher risk of withdrawal symptoms – of greater duration and severity – than other similar products available in the market.

339.     Plaintiffs' injuries were due to the fact that Cymbalta was in a defective condition, as described herein, rendering it unreasonably dangerous to her.

340.     As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs' suffered significant injuries as set forth herein.

341.     WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## PRAYER FOR RELIEF

342.     WHEREFORE, Plaintiffs respectfully pray for judgment against Lilly as follows:

a.  Judgment in favor of Plaintiffs and against Lilly, for all damages in such amounts as may be proven at trial;

b.  Compensation for economic and non-economic losses, including but not limited to, past and future medical expenses, medical monitoring, out-of-pocket expenses, past and future physical pain and mental anguish, past and future physical impairment, past and future loss of companionship and consortium, and past and future loss of household services, in such amounts as my be proven at trial;

c.  Past and future general damages, according to proof;

d.  Any future damages resulting from permanent injuries;

e.  Psychological trauma, including but not limited to mental anguish, mental distress, apprehension, anxiety, emotional injury, psychological injury, depression, and aggravation of any pre-existing and/or underlying emotional or mental diseases or conditions;

f.  Pain and suffering;

g.  Loss of enjoyment of life;

COMPLAINT

h. Punitive and exemplary damages in an amount to be determined by trial, including but not limited to treble damages should such damages be prescribed by law;

i. Attorneys' fees and costs;

j. Prejudgment and post-judgment interest;

k. Costs to bring this action; and

l. Any such other and further relief as the Court may deem just and proper in law or in equity.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully request a trial by jury on all claims triable as a matter of right.

DATED: December 30, 2014             **BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**

/s/ R. Brent Wisner
Michael L. Baum (SBN: 119511)
mbaum@baumhedlundlaw.com
R. Brent Wisner (SBN: 276023)
rbwisner@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: (310) 207-3233 / Fax: (310) 820-7444

***Counsel for Plaintiffs***

COMPLAINT