UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER NELSON-DEVLIN, et al.,<br><br>Plaintiffs<br><br>v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | No. 2:14-cv-02811-KJM-EFB |
| RACHEL ANNE BEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | No. 2:14-cv-02914-KJM-EFB |
| KATRYNA WOLFF, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | No. 2:14-cv-03004-KJM-EFB<br><br>ORDER |

1

The question before the court is where, if at all, more than seventy plaintiffs from thirty-seven federal court districts in twenty-one states may litigate their Cymbalta discontinuation claims against defendant Eli Lilly and Company (Lilly). Plaintiffs currently are proceeding in the three related actions in this district captioned above, each of which includes at least one California plaintiff. Defendant has moved to 1) dismiss the non-California plaintiffs based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); 2) sever plaintiffs' improperly joined claims into separate actions under Federal Rule of Civil Procedure 21; and 3) transfer the out-of-district plaintiffs' claims to their proper venues under 28 U.S.C. § 1404. ECF No. 9. Plaintiffs oppose, ECF No. 21, and have now filed motions to transfer the sixty-nine non-California plaintiffs to the Southern District of Indiana, where defendant Lilly is headquartered, ECF No. 24.[1] Defendant opposes, arguing the plaintiffs' individual home districts are the more appropriate venue, as set forth in their initial motion. ECF No. 28. Plaintiffs have not filed a reply. For the following reasons, the court DENIES defendant's motion to dismiss, GRANTS IN PART the motion to sever, and GRANTS plaintiffs' motion to transfer the actions to the Southern District of Indiana.

I.   PROCEDURAL BACKGROUND

A.   JPML Proceedings

At least 58 Cymbalta discontinuation cases have been filed in the past two years against Eli Lilly, a pharmaceutical corporation headquartered in Indianapolis, Indiana. Def.'s Mot. at 4. The first, *Saavedra v. Eli Lilly and Company*, 12-CV-9366, was filed in late 2012 in the Central District of California. *Id*. After filing the initial cases, plaintiffs' counsel received "thousands of inquiries" from other potential plaintiffs. Opp'n at 3. Counsel, seeking to initiate a multi-district litigation (MDL), filed 23 personal injury cases around the country in August 2013, all asserting claims related to Cymbalta discontinuation and withdrawal. *Id*. at 4. Counsel then filed a motion to create a multi-district litigation (MDL) with the Judicial Panel on Multidistrict Litigation ("JPML"). *Id*. The motion sought to centralize all Cymbalta litigation in the Central

---

[1] Each of the moving papers was filed in each action. The court refers to the docket entries in the first-filed case, 14-2811, for ease.

1  District of California, the venue with the largest number of cases and the most mature dockets, or
2  in the alternative the Western District of Wisconsin, the Southern District of California, or the
3  District of Oregon, where other cases were pending.  *In re: Cymbalta (Duloxetine) Products Liab.*
4  *Litig.*, 65 F. Supp. 3d 1393, 1393 (U.S. J.P.M.L. 2014).  While the transfer motion was pending
5  before the JPML, 16 additional Cymbalta withdrawal lawsuits, some with different counsel, were
6  filed around the country, including in the Southern District of Indiana.  Opp'n at 6.

7  The JPML declined to create an MDL, reasoning that while "[u]nquestionably,
8  these actions share factual issues concerning Cymbalta's development, marketing, labeling, and
9  sale," the combined effect of the varying procedural postures, the conduct of common discovery
10 in the earliest-filed actions, and the limited number of counsel-two firms representing plaintiff,
11 and a common counsel for defendant -- "suggests that informal coordination with respect to the
12 remaining common discovery, as well as other pretrial matters, should be practicable."  *In re:*
13 *Cymbalta (Duloxetine) Products Liab. Litig.*, 65 F. Supp. 3d at 1394.  Since the JPML's decision,
14 plaintiffs' counsel has been working toward transferring cases to the Southern District of Indiana,
15 either by motion or stipulation, in an effort to efficiently coordinate the numerous actions
16 pending.  *See* Ex. C, ECF No. 21-2.  While counsel has informed the court another motion to
17 create a Cymbalta MDL is pending before the JPML, as of the date of this order, the JPML has
18 not addressed that motion.

19     B.  Local Proceedings

20     In the *Nelson-Devlin* action, filed in this district on December 2, 2014, there are 22
21 plaintiffs, 15 non-Californians and 7 Californians.  The nonresident plaintiffs are citizens of
22 Alabama, Arkansas, Kentucky, Pennsylvania, South Carolina, Tennessee and Texas.  *See* Nelson
23 Devlin Compl. ¶¶ 2-17.

24     In the *Ben* action, filed on December 15, 2014, there are 27 plaintiffs from 14
25 different states; Ben Compl., ECF No. 5.  Two plaintiffs are citizens of California.  The rest are
26 citizens of Alabama, Arizona, Georgia, Illinois, Iowa, Kentucky, Maine, Nevada, North Carolina,
27 Oklahoma, South Carolina, Tennessee and Texas.  *Id.*
28 /////

In the *Wolff* action, filed on December 30, 2014, there are 31 plaintiffs from 16 different states; two plaintiffs reside in California. Wolff Compl., ECF No. 5. The remaining plaintiffs are citizens of Alabama, Connecticut, Florida, Georgia, Idaho, Illinois, Louisiana, Montana, New Mexico, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas and West Virginia. *Id*.

This court found the actions presented similar questions of law and fact and that judicial resources would be saved by having the actions heard by the same judge, and so related the actions without consolidating them on May 19, 2015. ECF No. 19. Also in May 2015, Lilly filed the pending motions.

The court heard the matters on July 24, 2015, at which point Lilly's counsel stated that if each non-California plaintiff would agree to have his or her claims transferred to the district where each plaintiff resides, Lilly would withdraw its motions to dismiss. The court instructed the parties to meet and confer regarding that possibility and gave them one week to file a stipulation if they reached an agreement. The parties communicated briefly through e-mail, attached to plaintiffs' motion, ECF No. 25-1, but did not reach an agreement. *Id*. Instead, plaintiffs filed their motions to transfer venue for all non-California plaintiffs to the Southern District of Indiana. *Id*.

II.     SUMMARY OF CLAIMS

In each complaint, plaintiffs allege 1) negligence; 2) design defect; 3) failure to warn; 4) negligent misrepresentation; 5) fraud; and 6) breach of implied warranty claims under state law related to their use – or more specifically, their discontinuation of the use – of Cymbalta, a selective serotonin and norepinephrine reuptake inhibitor ("SNRI") manufactured, marketed and sold by defendant Lilly. *See* Nelson-Devlin Compl., ECF No. 1. Among other things, Cymbalta is used to treat depression, generalized anxiety disorder, and fibromyalgia. *Id*. ¶ 27. Plaintiffs argue the marketing, promotion, and labeling of Cymbalta was inaccurate or insufficient. *See, e.g., id*. ¶ 194. Plaintiffs allege defendant knew that Cymbalta had a significant withdrawal risk, but failed to adequately warn patients of these risks. *Id*. ¶ 195. Plaintiffs allege personal injuries and damages suffered as a result of Lilly's failure to provide adequate instructions for

4

discontinuation or an adequate warning that fully and accurately informed them of the frequency, severity, and/or duration of symptoms associated with Cymbalta withdrawal. *Id*. at 11–12. In addition, plaintiffs allege that Lilly defectively designed Cymbalta pills as delayed-release capsules with beads available only in 20, 30 and 60 mg doses, with a label that instructs users that the drug "should be swallowed whole and should not be chewed or crushed, nor the capsule be opened and its contents be sprinkled on food or mixed with liquids." *Id*. at 2. Lilly's design and accompanying instructions prevented plaintiffs from properly tapering off of the drug. *Id*.

### III.     JOINDER/SEVERANCE

Permissive joinder is governed by Federal Rule of Civil Procedure 20. Under this rule, "[p]ersons may join in one action as plaintiffs if: they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). A district court may "on just terms, add or drop a party" and "may also sever any claim against a party." Fed. R. Civ. P. 21. A court may sever particular parties or claims where joinder is improper under Rule 20 and "no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Moreover, even where joinder is proper under Rule 20, a court may still order a severance to prevent delay or prejudice. *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1296 (9th Cir. 2000). The decision whether to grant or deny severance lies within the district court's sound discretion and is subject to review only for clear abuse. *See Coughlin*, 130 F.3d at 1351.

The first Rule 20 prong, the "same transaction" requirement, refers to similarity in the factual background of a claim. *Coughlin*, 130 F.3d at 1350. Claims that "arise out of a systematic pattern of events" and "have [a] very definite logical relationship" arise from the same transaction or occurrence. *Bautista v. Los Angeles Cnty*., 216 F.3d 837, 842–43 (9th Cir. 2000). Plaintiffs contend correctly that they all allege the same theory of liability in Lilly's development of Cymbalta and its decision to market it while downplaying the risk of debilitating and potentially life-threatening withdrawal symptoms. In resolving the claims, the court will look to the warnings and representations made on behalf of Lilly, which are the same for all plaintiffs.

5

1  The marketing materials and risk disclosures were distributed by virtue of actions taken by Lilly
2  on a national scale.  While an individual doctor's advisement and care is also relevant, it will not
3  be determinative of Lilly's liability, and Lilly is the only defendant.  This factor weighs in favor
4  of joinder.

5  The second Rule 20 prong, requiring a common question of law or fact, gives the
6  court pause.  The Ninth Circuit has considered and rejected the argument that plaintiffs' claims
7  presented similar factual and legal questions where plaintiffs filed 49 different immigration
8  applications and forms, the court was required to apply different legal standards, and each
9  plaintiff presented "a different factual situation" and required "personalized attention" from the
10 defendant.

> [T]he mere fact that all [p]laintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact.  Clearly, each Plaintiff's claim is discrete, and involves different legal issues, standards, and procedures.  Indeed, even if Plaintiffs' cases were not severed, the Court would still have to give each claim individualized attention.

*Coughlin*, 130 F.3d at 1351.

In a case involving 137 plaintiffs with claims against Bank of America for deceptive mortgage lending and securitization, the Circuit observed.

> This case involves over 100 distinct loan transactions with many different lenders.  These loans were secured by separate properties scattered across the country, and some of the properties, but not all, were sold in foreclosure.  While Plaintiffs allege in conclusory fashion that Defendants' misconduct was "regular and systematic," their interactions with Defendants were not uniform.  Factual disparities of the magnitude alleged are too great to support permissive joinder.

*Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013).

The factual variations in *Visendi* were not as numerous in this case.  Here, unlike in *Visendi*, each of the California plaintiffs experienced his or her injury in this state and would present identical legal questions.  The warnings accompanying prescriptions of Cymbalta are identical.  Judicial economy would be served by allowing the California plaintiffs to proceed together, rather than in numerous separate actions pending in this and other districts in California.

6

In contrast, the non-California plaintiffs experienced their injuries in different states, and their claims are subject to different state laws. *See Orr v. Bank of Am.*, 285 F.3d 764, 772 & n.4 (9th Cir. 2002) (noting that California has little interest in having its laws apply where alleged torts occurred out of state, where plaintiffs are out-of-state residents and defendants are located out of state). Rule 20 "is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Coughlin*, 130 F.3d at 1351. Maintaining the various non-California plaintiffs in the same action, which would require the application of sixteen different state laws, would not promote judicial economy as joinder of the California plaintiffs does. *See, e.g., Helm v. Alderwoods Grp. Inc.*, No. C 08-01184 SI, 2011 WL 2837411, at *2 (N.D. Cal. July 18, 2011) (finding severance appropriate because the plaintiffs were numerous, worked in different positions in different states, and raised claims only under state law). Therefore, the court finds the non-California plaintiffs' claims severable.

IV.     TRANSFER/DISMISSAL

The court next looks to whether the non-California plaintiffs should be dismissed or transferred. Dismissal, rather than transfer, may be appropriate where the plaintiff is harassing the defendants, acting in bad faith or forum shopping; where the plaintiff's action is frivolous, or where the transfer would be futile because the case would be dismissed even after transfer. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *Froelich v. Petrelli*, 472 F.Supp. 756, 760 (D. Haw. 1979) ("[T]his Court has the power to transfer this action in the absence of personal jurisdiction over the defendants under either § 1404(a) or § 1406(a) if such a transfer is 'in the interest of justice.'").

No facts support dismissal over transfer here. The cases could have been brought in the Southern District of Indiana, where defendant resides, or in plaintiffs' home states, where they reside and the actions giving rise to these claims occurred at least in part. Plaintiffs are subject to various statutes of limitation, meaning their claims could be time-barred if they are dismissed. The interests of justice therefore support transfer. *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 430 n.7 (1965) ("when dismissal of an action for improper venue would terminate rights without a hearing on the merits because [the] plaintiff's action would be barred by a statute

7

of limitations, 'the interest of justice' requires that the cause be transferred"). The court must now determine under which statute transfer is appropriate, 28 U.S.C. § 1404 or § 1406. Plaintiffs argue either statute supports transfer to Indiana, while defendant argues that, should the non-California plaintiffs not be dismissed outright, transfer to their home districts is appropriate under § 1404(a).

A.  28 U.S.C. §§ 1404(a) and 1406(a)

Under 28 U.S.C. § 1404(a), a court may transfer an action to another district "[f]or the convenience of the parties and witnesses, in the interest of justice." Although a plaintiff's choice of forum generally is accorded deference, the plaintiff's choice is but one of several factors a court must consider. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Other factors include: 1) the forum most familiar with the governing law; 2) the respective parties' contacts with the forum; 3) the forum contacts relating to the plaintiff's cause of action; 4) the differences between the costs of litigation in the two forums; 5) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and 6) the ease of access to sources of proof. *Id.* (*citing Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Section 1406(a) provides for transfer of venue when venue is improper in the transferring court and a transfer is in the interest of justice. 28 U.S.C. § 1406(a). The statute provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Unlike 1404(a) transfers, no particular factors guide the decision ordering transfer under § 1406. The court looks to whether the action could have been brought in the transferee venue, and "considerations similar to those in the foregoing § 1404(a) 'interest of justice' analysis would apply here as well." *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1214 (D. Haw. 2002).

Section 1404(a) generally applies when the transferor court is a proper venue for the action, while § 1406(a) is relied on when venue is not proper in the forum where a plaintiff originally filed suit. *Id.* at 1212. That said, there are limited practical differences between a Section 1404(a) transfer and one under Section 1406(a). A case may be transferred under either

1   statute regardless of whether the transferor court has found personal jurisdiction lacking. *See*
2   *Desantos v. Bourland*, No. CIV. 14-00473 ACK, 2015 WL 3439157, at *5 (D. Haw. May 27,
3   2015) (citations omitted).  Significantly, in diversity cases such as this one, as a general rule
4   federal courts "must apply 'the forum state's choice of law rules to determine the controlling
5   substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting
6   *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)).  But this is not the case when a matter is
7   transferred under § 1404(a). *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir.
8   1993).  Rather, the transferee court applies the substantive law, including choice of law
9   principles, of the transferor court.  *Id*.  Therefore here, if transfer is effected based on section
10  1406, the choice of law rules of the transferee court, whether Indiana or a plaintiff's home state,
11  are applied.  But if based on § 1404(a), this state's choice of law rules would still control.  No
12  party addresses this distinction in its moving papers, and at hearing, both parties seemed to agree
13  that the law of a plaintiff's home state, as the site of the actions giving rise to these claims, would
14  apply regardless of venue. *See also* Def.'s Opp'n at 1.

15              Both § 1404(a) and § 1406(a) permit transfer to another "district or division," only
16  if the transferee district is a proper venue and can exercise personal jurisdiction over the
17  defendant.  Under both §§ 1404(a) and 1406(a), the transferee court must be one in which the
18  action might otherwise have been brought.  Recently, in *Atlantic Marine Construction Company,*
19  *Inc. v. United States District Court for the Western District of Texas*, ___ U.S. ___, 134 S.Ct. 568
20  (2013), the Supreme Court clarified that § 1406(a) allows for transfer only when venue is
21  "wrong" or "improper." *Id*. at 577.  Whether venue is wrong or improper is governed by 28
22  U.S.C. § 1391, which provides, in relevant part, that venue is proper only in a judicial district in
23  (1) which any defendant resides, if all defendants are residents of the state in which that district is
24  located; or (2) a substantial part of the events giving rise to the claim occurred.  28 U.S.C. §
25  1391(b).

26       B.  Discussion

27              The court concludes that, under the provisions of 28 U.S.C. § 1391(b), venue in
28  the Eastern District of California is not proper as to the non-California plaintiffs.  Defendant does

9

1  not reside here, and all of the events giving rise to these plaintiffs' claims occurred in their home
2  states, where they were prescribed and took Cymbalta, or in Indiana, where the defendant is
3  headquartered and various corporate and marketing decisions giving rise to the claims were made.
4  Transfer of venue is therefore proper under § 1406(a), as that section is generally applied where
5  the transferor court is not a proper venue for the action. *See Kawamoto*, 225 F.Supp.2d at 2012.

6  Plaintiffs argue that the non-California plaintiffs' actions should be transferred to
7  Lilly's home district, the Southern District of Indiana, because having numerous individual cases
8  in districts across the country will not promote judicial economy and will be burdensome to all
9  parties, who will be subject to various scheduling orders and eventually, trial schedules. As set
10 forth above, defendant argues that the convenience of the parties and physician witnesses requires
11 that the case be litigated in plaintiffs' home districts, where they were prescribed Cymbalta and
12 experienced their injuries. The court finds defendant's argument unpersuasive for several
13 reasons.

14 Based on the limited record before the court, some witnesses, including plaintiffs
15 and their treating physicians, reside in plaintiffs' home districts; some are located in the Southern
16 District of Indiana, so neither venue is ideal for this type of case in terms of access to witnesses.
17 Defendants state that "[r]elevant witnesses, evidence, and sources of proof will most readily be
18 found" in the district where plaintiffs reside.  Defs.' Mot. at 20. Plaintiffs represent that a
19 significant number of liability witnesses are located in the Southern District of Indiana,
20 specifically, Dr. Michael Detke, Dr. Madeleine Wohlreich, Dr. Sharon Hoog, Dr. Christine
21 Phillips, and Steven Knowles. Pls.' Mot. at 5. Therefore, all parties will require travel to
22 plaintiff's home district and Lilly's home district in furtherance of this litigation, regardless of
23 where it is venued, because both parties will need to consider the extent and method of the
24 warnings given to plaintiff by their treating physicians, as well as any damages experienced from
25 withdrawal.

26 Given that convenience is a neutral factor, the court considers the effect on judicial
27 efficiency. The backdrop of this case is that dozens of these cases are being litigated nationally,
28 with a large number already proceeding in the Southern District of Indiana: there currently are

10

100 plaintiffs in cases pending in the Southern District of Indiana.  As plaintiffs argue, a large number of decentralized cases will create numerous case management challenges for the parties while burdening multiple districts with claims that are largely similar.

Assuming the §1404(a) factors are relevant even under § 1406, these factors also support transfer.  The court in Indiana is as familiar with the governing law and is already adjudicating several similar cases.  Defendant of course has extensive contacts with its resident forum, and plaintiffs have consented to adjudication there.  The forum has a relationship with the claims because any decisions as to the marketing and disclosure of risks of Cymbalta were made at least in part at Lilly's headquarters.  The differences in costs of litigation would be minimal.  The attendance of non-party witnesses and access to proof presents challenges in either venue.

Because this action could have been brought in the Southern District of Indiana and the interests of justice support transfer over dismissal, plaintiffs' motion to transfer venue to the Southern District of Indiana is GRANTED.

V.   CONCLUSION

Defendant's motion to dismiss is DENIED.  The non-California plaintiffs[2] are

/////

/////

---

[2] These plaintiffs are: (1) Cynthia Ellis, Jodi Lynn Trommler, Brett Christopher Trommler, Oney Lou Haynes, Damian Haynes, Dinah Lisa Tinnell, Sherman Ray Tinnell, Rhonda Mischelle Wilson, Linda Lee Buttermore, Suzanne Langford, Ronald Dean, Jr., Rita Dean, Michella Ann Marie Stephens,  Lena Brister, Camille Dollins (*Nelson-Devlin* action); (2) Libby Diane Hollinger, Jessica Tipton, Kenneth Ray Price, Danny Ray Trosper, Vicki Craven, Robert Craven, Katherine Jane Bentley; Jamie Nell Hunt, Devon Roberts, Carlita Wa'zette McKelvin, Lawrence Virgil Curtis, Philip Randall Wilhite, Rachelle Michelle Bruneau, Terry Alan Rayfield, Elizabeth Ann Guess, Diane Marie Liebhaber, John Robert Adams, Derek Delayne Haskins, Patricia Marie Dorminy, Regina Kay Thomas, Larry Serna, Lynette Serna, Evelyn W. Daniels, Lisa Ray Lewis, Joseph Michael Lewis (*Ben* action); and (3) James Henery Amundsen, Tony Labell Harrison, Martin Adelido Herrera, Gloria J. Jordan, Pearlie Mae Maddox, Denise Kay Vital, William George Booker, Bobbi Jean Wood, Goldie Faye Anderson, James Caldwell, Christina Bailey, Robert Bailey, Patricia Ann Jackson, Wendy Denese Daniels, Arthur Lee Davis, Ronnie Davis, Yolanda Necole Jordan, Samuel Earl Smith, Stephen Thomas Magee, Sandra Jean Mendoza, Lisa Denise Smith, Beverly Thurman, David J. Adamchick, Joyce Lightly, Loretta Pressley, Melody Rehm, Erica Shunoski, Carla Turner, James Fanelli (*Wolff* action).

SEVERED AND TRANSFERRED to the Southern District of Indiana. The remaining plaintiffs' actions will continue in this district.

    IT IS SO ORDERED.

DATED: September 10, 2015.

_____
UNITED STATES DISTRICT JUDGE